UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-20036-ALTMAN

**BRANDON ALAN WOODINGTON**,

    *Plaintiff*,

v.

**CITY OF MIAMI-DADE**, *et al.*,

    *Defendants*.

_____/

# ORDER

Our *pro se* Plaintiff, Brandon Alan Woodington, has filed a civil rights complaint under 42 U.S.C. § 1983 against the "City of Miami-Dade,"[1] the Miami-Dade Police Department, and five Miami-Dade police officers[2]—all in their individual and official capacities. *See* Complaint [ECF No. 1] at 2–5. Woodington claims that, while arresting him for an alleged retail theft, the Officer Defendants used "unnecessary force" and stole his "phone and money." *Id.* at 7. After careful review, we find that Woodington's Complaint suffers from several procedural and substantive defects. We therefore **DISMISS** the Complaint and **GRANT** Woodington an opportunity to file an amended complaint.

## THE LAW

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). A "prisoner" is "any person incarcerated or detained in any facility who is . . . accused of [or]

---

[1] Since the "City of Miami-Dade" doesn't exist, we'll assume that Woodington is trying to sue "Miami-Dade County."

[2] We'll refer to the officers collectively as the "Officer Defendants."

convicted of . . . violations of criminal law." *Id.* §1915A(c).[3] In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint, or any portion of the complaint," when it is: (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted"; or (2) "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b). When screening a complaint under § 1915A, we must "tak[e] the allegations in the complaint as true." *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006), *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010).

To comply with federal pleading standards, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Federal Rules also require plaintiffs to "state [their] claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 10(b). "A 'shotgun pleading' is one that lacks the minimum clarity, brevity, or coherence required by Rules 8 and 10 of the Federal Rules of Civil Procedure." *Lozano v. Prummell*, 2022 WL 4384176, at *2 (M.D. Fla. Sept. 22, 2022) (Steele, J.). As the Eleventh Circuit has explained, a complaint is a shotgun pleading if it:

> (1) contains multiple counts where each count adopts the allegations of all preceding counts; (2) is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) fails to separate into a different count each cause of action; or (4) asserts multiple claims against multiple defendants without specifying which defendant is responsible for which act.

*Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019). "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings," *Vibe Micro, Inc. v. Shabnets*, 878 F.3d 1291, 1294–95 (11th Cir. 2018), which share the following two characteristics: *First*, they "fail to one degree or

---

[3] Woodington's current incarceration (in Virginia) has nothing to do with his claims against the Defendants. *See* Complaint at 10 (alleging that Woodington was "found not guilty" of the offenses he was arrested for in this case). But we must still apply the screening provisions of § 1915A because Woodington met § 1915A(c)'s definition of a "prisoner" when he filed the Complaint. *See Danglar v. Dep't of Corr.*, 50 F.4th 54, 59 (11th Cir. 2022) ("In assessing whether the provisions of [§ 1915A] apply to a plaintiff, this Court looks to the prisoner's status at the time he filed his complaint." (cleaned up)).

another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Dorman v. Palm Beach Cnty.*, 2020 WL 2078527, at *1 (S.D. Fla. Apr. 30, 2020) (Altman, J.) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015)). *Second*, they "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Ibid.* (quoting *Vibe Micro,* 878 F.3d at 1295 (cleaned up)).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

Courts may dismiss a plaintiff's complaint for failure to comply with the Federal Rules, the Local Rules, or court orders. *See, e.g.*, *Brutus v. Int'l Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240–41 (11th Cir. 2009) ("The court may dismiss a claim if the plaintiff fails to prosecute it or comply with a court order."); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion."). And *pro se* litigants are not exempt from procedural rules. *See Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) ("Despite construction leniency afforded *pro se* litigants, we nevertheless have required them to conform to procedural rules."); *see also Heard v. Nix*, 170 F. App'x 618, 619 (11th Cir. 2006) ("Although *pro se* complaints must be liberally construed, such complaints still must comply with the procedural rules governing the proper form of pleadings." (cleaned up)); S.D. FLA. L.R. 1.1 ("When used in these Local

3

Rules, the word 'counsel' shall be construed to apply to a party if that party is proceeding pro se."). The Court may not assist a *pro se* plaintiff in constructing "a theory of liability from facts never alleged, alluded to, or mentioned" in the complaint. *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011). Instead, "to prevail on a particular theory of liability, a party must present that argument to the district court." *Ibid.*; *see also GJR Inves., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) ("Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as de facto counsel for a party."), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## ANALYSIS

Woodington alleges that, on February 17, 2023, he was confronted by "Miami-Dade Detectives and one loss prevention officer" who "call[ed] out my discription [sic]." Complaint at 8. Woodington immediately fled the scene and "ran through the parking lot" to avoid the police officers, who "almost ran me over with they're [sic] car[.]" *Ibid.* Woodington ended up in a nearby park, where he tried to put on a hoodie "to change my discription [sic]." *Ibid.* When the police found Woodington, he "tried to run agian [sic] but was out of breath." *Ibid.* "[K]nowing that [he] could not get away," Woodington "put [his] hands up in surrender," dropped to his knees, and told the police that "I give up." *Ibid.* Despite this attempt to surrender, the Officer Defendants "viciously and maliciously assaulted" Woodington by "punching [him] in the face," choking him, and "knee[ing]" and hit[ting]" him "up and down the left side of [his] body." *Id.* at 9. As a result of this "assault," Woodington lost a tooth, was bleeding profusely, and had to be taken to a hospital for treatment. *See ibid.* ("Once I arrived [at the hospital] I was stitched and gauzed up. Stitches were put in my left forehead above my eyebrow.").

After receiving medical attention, Woodington was transported to a Miami-Dade County jail and charged with "petit larceny, assault on a [law enforcement officer], and resisting with violence." *Id.* at 10. During the booking process, "one of the officers" stole Woodington's cell phone and $52.00

4

in cash. *See ibid.* A state-court judge ultimately agreed with Woodington's defense counsel that the State had failed to prove Woodington "ever hit an officer or be [sic] combative" and dismissed the assault and resisting-arrest charges. *Ibid.* Woodington now seeks $361,000.00 from the Defendants for the officers' alleged use of excessive force. *See id.* at 7. Woodington also accuses the Miami-Dade Police Department of "creating and allowing the unconstitutional policy or custom which allowed the Defendants to violate my rights with excessive force" and of failing to adequately train, supervise, discipline, and hire the officers who hurt him. *Id.* at 5.

Consistent with our obligation to read Woodington's Complaint liberally—but without "rewrit[ing] an otherwise deficient pleading in order to sustain an action," *GJR Invs.*, 132 F.3d at 1369—we find that Woodington has advanced two claims for relief. *First*, he accuses the Officer Defendants of using excessive force when they "viciously and maliciously assaulted" him during his arrest. Complaint at 8. *Second*, he seeks to hold Miami-Dade County and the Miami-Dade Police Department liable for their employees' alleged use of excessive force under a variety of supervisory-liability theories. *See id.* at 5. After reviewing the Complaint's factual allegations, we conclude that: (1) all claims, except the *individual-capacity*, excessive-force claims against the Officer Defendants, must be dismissed for failure to state a claim; (2) Woodington should be allowed to re-plead an *official-capacity* claim against Miami-Dade County; and (3) Woodington must pay the filing fee or file a legally sufficient motion to proceed *in forma pauperis*.

\*   \*   \*

The Complaint names seven Defendants in their individual and official capacities: the "City of Miami-Dade," Officer "S. Ramirez," Officer "P. Fuearte," Officer "S. Martian," Officer Arcila Leyva, Officer "Gibson," and the Miami-Dade Police Department. *See* Complaint at 2–5. "When a plaintiff sues a municipal officer in the officer's individual capacity for alleged civil rights violations, the plaintiff seeks money damages directly from the individual officer." *Busby v. City of Orlando*, 931

5

F.2d 764, 772 (11th Cir. 1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). "Official capacity" suits, on the other hand, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). In other words, an official-capacity claim is brought "against the entity" that employs the individual; "[i]t is *not* a suit against the official personally[.]" *Graham*, 473 U.S. at 166. Consequently, a defendant sued in his or her official capacity can rely on "forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." *Id.* at 167. And, "[u]nder the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

Woodington cannot sue *all* Defendants in both their individual and official capacities. For starters, the official-capacity claims against the Officer Defendants must be dismissed because Woodington only seeks money damages from them. *See* Complaint at 7 ("I'm asking for $361,000.00.").[4] And, under the Eleventh Amendment, those Defendants are immune from being sued in their official capacities for money damages. *See Jackson*, 16 F.3d at 1575 ("[S]tate officials sued for damages in their official capacity are immune from suit in federal court."). Next, the Miami-Dade Police Department cannot be sued in *either* its individual or official capacity because, "[u]nder Florida law, police departments are not legal entities amenable to suit." *Williams v. Miami-Dade Police Dep't*, 297 F. App'x 941, 945 (11th Cir. 2008) (first citing *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992); and then citing *Masson v. Miami-Dade Cnty.*, 738 So. 2d 431, 432 (Fla. 3d DCA 1999)). Finally,

---

[4] Woodington implies that he might also be seeking an injunction requiring the Miami-Dade Police Department to fire the Officer Defendants. *See* Complaint at 7 ("I would like thease [sic] officers fired for using unnecessary force[.]"). Even if we construe this stray line as constituting a separate request for injunctive relief, we cannot force a municipality to fire its employees. *See Seminole Tribe of Fla. v. State of Fla.*, 11 F.3d 1016, 1028 (11th Cir. 1994) (explaining that a plaintiff cannot "obtain a federal injunction" to "compel an executive official to undertake a discretionary task" (citing *Ex Parte Young*, 209 U.S. 123, 160 (1908)). If Woodington is indeed asking for this kind of injunctive relief, therefore, we **STRIKE** it—meaning that (as before) only Woodington's request for money damages remains.

Woodington cannot sue Miami-Dade County in its *individual* capacity because it's a municipality—not an individual. *See, e.g.*, *Burgess v. Palm Beach Cnty.*, 2023 WL 7410056, at *2 (S.D. Fla. Nov. 9, 2023) (Altman, J.) ("Palm Beach County is a municipality and, as such, cannot be sued in its 'individual' capacity.'" (citing *Busby*, 931 F.2d at 776)). With all that out of the way, we'll turn to Woodington's *individual*-capacity claims against the Officer Defendants and his *official*-capacity claim against Miami-Dade County.

I. **The Individual-Capacity Claims against the Officers**

Since Woodington's "excessive force case [arises] out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's 'objective reasonableness' standard." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008).[5] "A genuine 'excessive force' claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest.'" *Ibid.* An officer's use of force will violate the Fourth Amendment if "it is objectively unreasonable under the facts and circumstances of a specific case, 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Stephens v. DiGiovanni*, 852 F.3d 1298, 1321 (11th Cir. 2017) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In determining whether the force the officers applied was objectively reasonable, the Eleventh Circuit has instructed us to consider "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Richmond v. Badia*, 47 F.4th 1172, 1182 (11th Cir. 2022).

---

[5] Woodington says that the Officer Defendants' conduct violated his Eighth Amendment right to be free from "cruel and unusual punishment" and his Fourteenth Amendment right to due process. Complaint at 3. This is incorrect. Woodington was an arrestee—not a prisoner or pretrial detainee—when the alleged excessive force took place, so his claims implicate only the Fourth Amendment. *See Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021) ("So, under the Supreme Court's current framework, the Fourth Amendment covers arrestees, the Eighth Amendment covers prisoners, and the Fourteenth Amendment covers [pretrial detainees].").

We can also assess "the justification for the application of force, the relationship between the justification and the amount of force used, and the extent of any injury inflicted." *Ibid.*

While we find that the Officer Defendants were entitled to use *some force*, we accept that Woodington has made out a facially sufficient excessive-force claim here. Woodington admits that, after a loss-prevention officer identified him as a theft suspect, he "ran" to a nearby park to escape from the police, attempted to put on a "hoodie to change my discription [sic]," and then tried to run again when the Officers found him in the park. Complaint at 8. The Officer Defendants were fully justified in using force to subdue a suspect who'd repeatedly fled from them and who was trying to conceal his identity—even if the suspected crime was relatively minor. *See, e.g.*, *Williams v. Sirmons*, 307 F. App'x 354, 361 (11th Cir. 2009) (holding that an officer who "grabbed [a pregnant arrestee] from behind and pulled her to ground and . . . placed his knee on her back and put his weight upon her in order to handcuff her" didn't use excessive force, even though she had only fled from a traffic stop); *Steen v. City of Pensacola*, 809 F. Supp. 2d 1342, 1352 (N.D. Fla. 2011) (Vinson, J.) (opining that "the single use of a taser on [a] fleeing, albeit non-violent" arrestee was *not* "an unconstitutional use of excessive force").

At the same time, Woodington alleges—and, at this stage of the case, we must accept—that, after one of the Officer Defendants "tackled me to the ground [and] got on top of me," the rest of the Officer Defendants choked him and repeatedly struck him in the face and the left side of his body—even though he was no longer trying to flee or resisting. Complaint at 8–9. Woodington recounts that, because of these attacks, he sustained significant injuries, which required a trip to the hospital and stitches. *See id.* at 9–10 ("Once I arrived [at the hospital] . . . stitches were put in my left forehead above my eyebrow."). Assuming all of this is true, Woodington has plausibly alleged that the force the Officer Defendants deployed *after* he was fully secured and compliant was objectively unreasonable—and thus excessive—under binding Eleventh Circuit precedent. *See, e.g.*, *Galvez v. Bruce*,

8

552 F.3d 1238, 1243–44 (11th Cir. 2008) ("[O]nce he was handcuffed, [the plaintiff] posed no danger to officer Bruce and no risk of flight. Thus, . . . we find that the force of repeatedly slamming Galvez into a corner of a concrete structure after he was handcuffed and compliant was disproportionate to the need for that force."); *Reese v. Herbert*, 527 F.3d 1253, 1274 (11th Cir. 2008) ("In view of the fact that Reese was lying face down on the ground, was not suspected of having committed a serious crime, did not pose an immediate threat of harm to anyone, and was not actively resisting or evading arrest, the defendants' use of force was a wholly disproportionate response to the situation."); *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002) ("Courts have consistently concluded that using pepper spray is excessive force in cases where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else."). Woodington has therefore asserted a plausible excessive-force claim against the Officer Defendants in their individual capacities—but only as to the force they deployed *after* he was fully secured and compliant.

## II.    Supervisory Liability

Woodington also seeks to hold Miami-Dade County liable for the Officer Defendants' use of excessive force. "[A] municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997). Instead, the plaintiff must "identify a municipal 'policy' or 'custom' that caused [his] injury." *Ibid.* (citing *Monell*, 436 U.S. at 694). "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* at 404. And the plaintiff cannot rely on a single constitutional violation as proof of an illegal custom or policy because "[a] single incident would not be so pervasive as to be a custom or practice." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1330 n.6 (11th Cir. 2003) (en banc).

9

Woodington alleges only that Miami-Dade County was responsible for "creating and allowing the unconstitutional policy or custom which allowed the Defendants to violate my rights with excessive force[.]" Complaint at 5. But he gives no facts from which we might reasonably infer that Miami-Dade County *deliberately* enacted a policy or custom that allowed police officers to use excessive force on arrestees. Woodington's only "evidence" of this "policy or custom" was his own personal experience with the Officer Defendants, together with his own speculative (and conclusory) allegation that such a policy exists—neither of which is good enough to sustain his claim. *See, e.g.*, *Grech*, 335 F.3d at 1330 n.6 ("A single incident would not be so pervasive as to be a custom or practice."); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Although Woodington falls far short of advancing a plausible municipal-liability claim, we'll give him one chance to replead this claim in an amended complaint. *Cf. Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018) ("When a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991))). In that amended complaint, however, Woodington must separate his "claims or defenses" into "numbered paragraphs, each limited as far as practicable to a single set of circumstances," FED. R. CIV. P. 10(b), and he must lay out the facts supporting each claim in a "short and plain statement . . . showing that [he] is entitled to relief," FED. R. CIV. P. 8(a)(2). We therefore warn Woodington that, if he fails to establish a viable municipal-liability claim in his amended complaint, we'll dismiss that claim *with prejudice*.

\*\*\*

One more thing. Woodington hasn't paid the mandatory $405.00 filing fee—which includes both the $350.00 filing fee set by Congress and an additional $55.00 administrative fee imposed by

10

our Court. *See* 28 U.S.C. § 1914(a) ("The clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court . . . to pay a filing fee of $350[.]"); *see also Court Fees*, UNITED STATES DIST. CT. S. DIST. OF FLA., https://www.flsd.uscourts.gov/court-fees (last visited Jan. 8, 2024). If Woodington doesn't pay the filing fee, his case cannot proceed. *See Alhussein v. Broward Cnty.*, 2023 WL 3816694, at *2 (S.D. Fla. June 5, 2023) (Altman, J.) ("Alhussein's failure to pay the filing fee is, standing alone, sufficient grounds to dismiss his complaint."). Woodington can solve this problem by either: (1) paying the full $402.00 filing fee; or, if he cannot afford to pay the fee upfront, (2) filing a legally sufficient motion to proceed *in forma pauperis* ("IFP"). If Woodington chooses to file an IFP motion, he *must also* include "a certified copy of the trust found account statement (or institutional equivalent) . . . for the 6-month period immediately preceding the filing of the complaint[.]" 28 U.S.C. § 1915(a)(2). If Woodington tries to file an IFP motion without this six-month account statement, we'll dismiss the case for failure to comply with our orders and for failure to pay the filing fee. *See* FED. R. CIV. P. 41(b).

## CONCLUSION

Accordingly, we **ORDER AND ADJUDGE** as follows:

1. By **March 5, 2024**, the Plaintiff must file an amended complaint. The amended complaint must be no longer than 20 double-spaced pages, must be signed under the penalty of perjury, and must contain a short and plain statement of the Plaintiff's claim for relief, a basis for federal jurisdiction, and a demand for judgment, in accordance with the guidance set out in this Order.

2. The amended complaint must be labeled "Amended Complaint" and must reference the case number listed at the top of this Order, so that it will be filed in *this* case.

3. The amended complaint must include a separate count for each Defendant, explaining what that Defendant did wrong, and it must present all allegations in numbered paragraphs.

4. The Plaintiff's official-capacity claims against the Officer Defendants, his individual-capacity claim against Miami-Dade County, and his claims against the Miami-Dade Police Department are all **DISMISSED with prejudice** for failure to state a claim. The Clerk is instructed to **TERMINATE** the Miami-Dade Police Department as a Defendant.

5. The Plaintiff must also (1) pay the $405.00 filing fee, or (2) file a legally sufficient IFP motion with a six-month account statement by **March 5, 2024**. We'll provide the Plaintiff with a Court-approved IFP form.

6. The Plaintiff's failure to file *both* the amended complaint *and* a legally sufficient IFP motion (or pay the filing fee) on time and in compliance with this Order shall result in dismissal of this case for failure to prosecute and for failure to comply with court orders. *See* FED. R. CIV. P. 41(b).

7. The Clerk's Office shall administratively **CLOSE** this case. If the Plaintiff's amended complaint survives screening, the Court will reopen this case after all remaining defendants have been served.

**DONE AND ORDERED** in the Southern District of Florida on February 5, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   Brandon Alan Woodington, *pro se*